Harry and Eugenia **GROMACKI,**
Petitioners,

v.

**COMMISSIONER OF INTERNAL REV-
ENUE,** Respondent (two cases).

Harry **GROMACKI,** Petitioner,

v.

**COMMISSIONER OF INTERNAL REV-
ENUE,** Respondent (two cases).

Nos. 15311–15314.

United States Court of Appeals
Seventh Circuit.

May 18, 1966.

Maurice Weinstein, Milwaukee, Wis.,
for petitioner.

Richard M. Roberts, Asst. Atty. Gen., Howard J. Feldman, Atty., Tax Division, Dept. of Justice, Lee A. Jackson, David O. Walter, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before SCHNACKENBERG, KNOCH and KILEY, Circuit Judges.

KILEY, Circuit Judge.

These four petitions for redetermination of income tax deficiencies and fraud penalties, for the years 1950 through 1957, were consolidated in the Tax Court, where after trial the Commissioner's determinations of deficiencies were sustained, with slight modifications not here in question.[1] Petitioners have appealed.[2] We affirm.

Harry Gromacki, whom we shall refer to as taxpayer, during the years in question was engaged in the business of renting coin-operated pinball machines and jukeboxes in the Milwaukee area. The rental was fifty per cent of the receipts of the machines, the other fifty per cent being retained by the owner of the premises where the machines were installed.

There are two issues presented by taxpayer here: whether the Tax Court's findings in support of the Commissioner's deficiency determinations for 1954 through 1957 were clearly erroneous, and whether there was sufficient evidence of fraud in the filing of the false returns.

With respect to the deficiency determinations, the Commissioner's determination is presumptively correct, and since the Tax Court sustained the determinations, the taxpayer has the burden on appeal of showing that the court's findings are clearly erroneous. Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 290–291, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212 (1953); Zeddies v. Commissioner of Internal Revenue, 264 F.2d 120, 126 (7th Cir.), cert. denied, 360 U.S. 910, 79 S.Ct. 1295, 3 L.Ed.2d 1260 (1959).

The only claim made with respect to the first issue is that the Tax Court's findings of corrected gross receipts for the years 1954 through 1957, and the corresponding omissions of taxable income, were based upon an improperly admitted exhibit. Taxpayer has not included all of the testimony and colloquy with respect to his objection to admission of the exhibit, but the part included

---

1. Int.Rev.Code of 1939, § 293(b), and Int.Rev.Code of 1954, § 6653(b), provide for a penalty tax of 50% of a deficiency which is in any part due to fraud with intent to evade tax. The decision of the Tax Court finds these deficiencies and penalties:

Addition to Tax—1939 Code

| Year | Deficiency | Sec. 294(d) (1) (A) | Sec. 293(b) |
|------|------------|---------------------|-------------|
| 1950 | $ 2,452.80 | $ 239.40 | $ 1,226.40 |
| 1951 | 912.60 | 111.82 | 456.30 |
| 1952 | 1,157.99 | 107.53 | 579.00 |
| 1953 | 1,917.95 | None | 958.98 |

Addition to Tax—1954 Code

| Year | Deficiency | Sec. 6653(b) |
|------|------------|--------------|
| 1954 | $ 4,406.04 | $ 2,203.02 |
| 1955 | 5,678.88 | 2,839.44 |
| 1956 | 12,515.61 | 6,257.81 |
| 1957 | 5,838.86 | 2,919.43 |

Taxpayers have not challenged the additions to tax under § 294(d) (1) (A) of the 1939 Code (failure to file declaration) for the years 1950–52.

2. Eugenia Gromacki is a party only because she joined with her husband in filing a joint return in 1953, 1955, 1956 and 1957.

shows that the court and counsel were clear that unless underlying evidence supported the agent's computations in the exhibit, it would be of "no use" to the court; and that the Commissioner was relying upon "the evidence * * * in the record" to support the agent's computation. There was no error in the admission of the exhibit (schedules) for the purpose for which it was received.

■ Taxpayer asserts that there is no evidence in the record supporting *any* of the figures contained in the exhibit, and that the finding of corrected gross receipts by the court based on this exhibit is unsupported by the evidence.[3] This assertion is patently frivolous. Not only does taxpayer refrain from showing what items were not supported by evidence— our review of the exhibit, the court's finding based on most of the information in the exhibit, and the rather voluminous record shows that the figures used in the exhibit are abundantly supported by evidence (e. g., taxpayer's tax returns and checks) in the record. The

court's finding based upon the evidence is not clearly erroneous.

■ Taxpayer contends there is no credible evidence that the living expenses determined by the Commissioner and the court for 1950 through 1957 are correct; that these items are based on guesses, and that the determination includes some expenditures by check not identified as to what the amounts were spent for. The Tax Court found that taxpayer, with a family ranging in size from seven in 1950 to ten in 1957, spent various amounts for personal living expenses.[4] Taxpayer does not suggest what these amounts should be. Rather, because the amount paid in cash had to be approximated upon the evidence and the amount paid by check included a relatively small amount for which the particular purpose was not ascertainable, taxpayer would have us reject the determination as to the personal expenditures. We cannot do this. The court's finding is not shown to be clearly erroneous; it is based upon taxpayer's checks (as to

3. Using the bank deposits plus cash expenditures method, the court found the following:

| | 1954 | 1955 | 1956 | 1957 |
|---|---|---|---|---|
| Corrected gross receipts | $44,888.35 | $72,513.94 | $98,077.56 | $91,167.70 |
| Less: reported gross receipts | 34,966.57 | 50,560.30 | 78,170.50 | 71,790.00 |
| Unreported gross receipts | $ 9,921.78 | $21,953.64 | $19,907.06 | $19,377.70 |

Respondent had determined additional business receipts for these four years, respectively, of $12,931.78, $23,453.64, $20,607.06, and $20,077.70. The difference is due mainly to the court's use of a lower dollar amount for estimated personal expenses paid by cash—a difference, we note, in taxpayer's favor.

◆

4. The court's finding:

| | Paid in Cash | Paid by Check |
|---|---|---|
| 1950 | $ 5,000.00 | |
| 1951 | 5,500.00 | |
| 1952 | 6,000.00 | |
| 1953 | 6,500.00 | |
| 1954 | 3,600.00 | $ 3,542.34 |
| 1955 | 4,000.00 | 5,514.57 |
| 1956 | 4,000.00 | 7,508.30 |
| 1957 | 4,000.00 | 12,618.54 |
| | $38,600.00 | $29,183.75 |

For the years 1954–57 respectively, the "paid by check" figure includes the following amounts for "unidentified expenditures": $201.60; $1,260.56; $1,932.25; and $685.44.

the relatively small amount not specifically "identified" in 1954–57, this was included in personal expenses after a thorough attempt to delete all business expenses, and taxpayer has not attempted to show these were not for personal expenses) and cash expenditures, taken in part from testimony of taxpayer and his wife and from State of Wisconsin records of taxpayer's estimated living expenses, and other evidence.

In the tax returns for the years 1950 to 1957, taxpayer claimed deductions of $62,872.39 for depreciation of jukeboxes, and depreciation of $5,862.80 for other items such as automobile and fixtures. He also deducted, as cost of goods sold, $78,756.28 for pinball machines; respondent disallowed this deduction but allowed a deduction for depreciation on these machines, and taxpayer concedes they are properly treated as business assets, not inventory items. Taxpayer states that respondent allowed in the computation of unreported income only $62,709.46 for all depreciation for the period. He contends that the net result of this was to increase his taxable income by $84,782.01, and that this, a substantial amount of his total unreported income, was caused by the error of his accountant.

But this overlooks the fact that respondent allowed over $26,000.00 for depreciation which had not been taken on the pinball machines; thus, using taxpayer's figures, only $36,000.00 of the originally claimed $68,735.19 depreciation on jukeboxes and other assets was allowed. He does not account for the difference between the amount originally claimed, $68,735.19, and the amount allowed, about $36,000.00. And the depreciation rate used, the amount of assets purchased in these periods, and other evidence on this point are not challengeable on this record. In any event, taxpayer's contention that these "erroneous deductions" he made largely cause the large understatement of income, and evince no fraudulent intent, is unconvincing. As the Tax Court pointed out, the excessive deductions for cost of pinball games sold and jukebox depreciation (1) do not affect the respondent's determinations for 1954–57 at all, for the bank deposits plus cash expenditure method was used to compute taxpayer's gross income; and (2) although the excessive deductions could be the cause of understatements in 1950–53, when the net worth plus expenditures method was used by respondent to determine understatements, this was not the case in 1951–53, when in fact taxpayer was allowed more than he claimed, and though in 1950 taxpayer claimed approximately $2,500.00 more than he was allowed, his understatement for that year (even excluding the $2,500.00 amount) was still in excess of $7,000.00—for a year in which he reported only $1,190.15 taxable income.

■ The presumption of correctness attributed to the Commissioner's deficiency determinations does not apply to the findings of fraud. Steiner v. Commissioner of Internal Revenue, 350 F.2d 217, 224 (7th Cir. 1965); Mensik v. Commissioner of Internal Revenue, 328 F.2d 147, 150 (7th Cir.), cert. denied, 379 U.S. 827, 85 S.Ct. 55, 13 L.Ed.2d 37 (1964). This is a question of fact which the Commissioner had to establish by clear and convincing proof, Steiner v. Commissioner of Internal Revenue, 350 F.2d at 220, but the Tax Court's finding that taxpayer's returns were false and fraudulent with intent to evade the tax, and that part of the deficiency or underpayment for each year was due to this fraud, decides this question and is not to be set aside unless clearly erroneous. Mensik v. Commissioner of Internal Revenue, 328 F.2d at 150; Teitelbaum v. Commissioner of Internal Revenue, 294 F.2d 541, 547 (7th Cir. 1961), cert. denied, 368 U.S. 987, 82 S.Ct. 603, 7 L.Ed.2d 525 (1962).[5]

5. If the record does not sustain the fraud finding, the assessments for the years 1950 through 1956 are barred by the three year limitation, Int.Rev.Code of 1939, §§ 275–76, Int.Rev.Code of 1954, § 6501(a), (c) (1), unless as to the years 1954 through 1956 taxpayer omitted from gross income "an amount properly in-

The opinion recited what the evidence showed: consistent and sizable understatements of income, twice or more the amount of taxable income reported;[6] that the taxpayer dealt largely in cash and made capital purchases, to a large extent (about $100,000.00), in cash; that receipt books which would reflect business income were unavailable to the Commissioner, having been "allegedly" destroyed by fire in December, 1959, and that other available records for the years 1954–57 agreed with returns filed; and that taxpayer made misstatements to agents about the number of loans he had made "to hide assets or true net worth."

The inferences drawn from the facts recited were that the dealing in cash and the "hiding" of records was done to cover up true taxable income; that taxpayer did not show records of cash purchases of machines to agents investigating his affairs; that the alleged destruction of the receipt books in 1959 does not explain taxpayer's earlier failure to show the records to the investigating agents; that the consistent and substantial understatement of taxable income and the failure to include all his income in his records warranted the inference of wilfulness; and that the total evidence showed taxpayer was motivated by a fraudulent intent.

The Tax Court recognized that the burden of proving fraud by clear and convincing evidence was upon the Commissioner. The court did not rely merely upon the understatements of income for its conclusion of fraud, nor upon merely the increase in net worth to infer that the understatements were fraudulent, nor did the court rely upon simple falsity in the returns or mere negligence in their preparation or failure alone to keep records; neither is the ultimate inference of fraud "tantamount" to a presumption. Cases cited by taxpayer, holding that reliance solely upon one of these various elements is insufficient to establish fraud, have no application here in view of the basis of the Tax Court's inferences of several indicia of fraud. It is useless to discuss the cases.

We think the inferences if warranted by the record justify the Tax Court's conclusion that the Commissioner had proven fraud by clear and convincing evidence. But taxpayer contends there

cludible therein * * * in excess of" 25% of the reported gross income, Int. Rev.Code of 1954, § 6501(e) (1) (A). We, like the Tax Court, do not reach this "unless" alternative.

The 1957 deficiency assessment was unquestionably within the three year limitation as extended by taxpayer's waiver.

6. Taxable income reported, as found by the Tax Court, and understatements:

| | Taxable Income Reported | Taxable Income Corrected * | Understatements |
|---|---|---|---|
| 1950 | $1,190.15 | $10,790.89 | $ 9,600.74 |
| 1951 | 1,617.39 | 5,431.62 | 3,814.23 |
| 1952 | 166.31 | 4,892.80 | 4,726.49 |
| 1953 | 1,032.49 | 8,948.79 | 7,916.30 |
| 1954 | 1,605.11 | 14,993.74 | 13,388.63 |
| 1955 | 702.49 | 21,419.41 | 20,716.92 |
| 1956 | 5,000.77 | 38,142.98 | 33,142.21 |
| 1957 | 2,625.31 | 22,852.43 | 20,227.12 |

* For years 1954–57, found by Tax Court in decision approving recomputation for entry of decisions.

is no evidence that he hid his books or dealt in cash to cover up his true income.[7]

■ The consistent and substantial understatement of income is established, and is a proper element for consideration. Teitelbaum v. Commissioner of Internal Revenue, 294 F.2d at 547. The court properly considered all attendant circumstances. The court properly found that taxpayer did not make available route sheets of collections for the years 1954 through 1957, and that he equivocated about loans made during those years. The sheets were an important check upon the records taxpayer had and the question of loans bore upon the amount of his income. The important records claimed by taxpayer to have been destroyed were later, when he was served with subpoena duces tecum, said by taxpayer to be in his attorney's hands. These inferences and facts are indicia of conduct likely to mislead or conceal assets and sources of income. Spies v. United States, 317 U.S. 492, 499, 63 S.Ct. 364, 87 L.Ed. 418 (1943). It is true that an accountant, since deceased, prepared the returns. But this does not absolve taxpayer where on a question of credibility the Tax Court decided the accountant prepared the returns from records supplied by taxpayer, and from incomplete records resulting in false returns. Drieborg v. Commissioner of Internal Revenue, 225 F.2d 216, 219 (6th Cir. 1955).

We conclude, for the several reasons given, that the record furnishes clearly and convincingly the basis for the inferences of fraud, and we approve the decision of the Tax Court that taxpayer filed the false returns for the years 1950 through 1957 with the fraudulent intent to avoid payment of income taxes.

Affirmed.

7. The propriety of Commissioner's use of the net worth plus expenditures method for the years 1950 through 1953 and use of the bank deposits plus expenditures method for the years 1954 through 1957 is not seriously challenged.