FRED DIXON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dixon v. Commissioner
Docket No. 7421-73.
United States Tax Court
T.C. Memo 1976-334; 1976 Tax Ct. Memo LEXIS 70; 35 T.C.M. (CCH) 1538; T.C.M. (RIA) 760334; November 3, 1976, Filed John E. Bassett, for the petitioner. Kevin A. Suffern, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent has determined a deficiency of $9,082.07 in petitioner's 1970 Federal income tax as well as additions to tax of $464.70 under section 6651(a) [1] and $464.70 under section 6653(a). The issues presented for our decision are as follows: 1. Whether and to what extent petitioner Fred Dixon (Dixon) understated his 1970 gross income; 2. Whether Dixon overstated a depreciation deduction taken for 1970; 3. Whether, because of the above two adjustments, Dixon's medical expense deduction for 1970 was overstated; and 4. Whether Dixon is liable for the additions to tax provided for under sections 6651(a) and 6653(a). *71 FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioner Fred Dixon filed his 1970 Federal income tax return on May 10, 1971. At the time his petition herein was filed, Dixon resided in Miami, Florida. Dixon was born in 1922. He lived and worked with his mother on a farm in Monticello, Florida, until 1940. Between 1940 and 1942, he worked for a lumber company and earned about $2,500 per year. In 1942, he was employed as a construction worker for a railroad and was paid $5,000 per year. In 1943, Dixon moved to New York and worked at a shipyard in Brooklyn where he earned an annual salary of about $6,000. Between 1945 and 1957, Dixon worked for Glidden Company where his annual salary ranged between $5,000 and $6,000 over those twelve years. He was married in 1947, and his wife earned about $70 per week. His wife died in 1954. In 1952, Dixon purchased a four-unit apartment building. He and his wife occupied one of the units and rented out the other three at $90 per month. During this period he also owned three garages, one of which he used personally and the other two he rented out at $15 per month. In 1957 Dixon left New York and *72 returned to Florida. Before he left he withdrew $2,750 from a savings account he maintained in New York. Between 1957 and 1965, he rented out all four apartment units in New York and, in 1965, he sold the apartment building and reported a capital loss of $749 on his 1965 return. Upon his return to Florida in 1957, Dixon set up a nursery and landscaping business. On his 1965-1970 Federal income tax returns, he reported adjusted gross income as follows: Adjusted Gross In- Year
come Returned
1965
$ (511.60)
1966
(836.85)
1967
6,330.62
1968
2,384.24
1969
1,772.31
1970
3,850.87
In 1970 he made the following expenditures: Merchandise purchased
$50,248.87
Cost of labor
766.75
Material and supplies
153.69
Other business expenditures
15,183.85
Rent expense
4,574.20
Purchase of truck
844.00
Living expenses
6,245.54
Payments of debts: Nellie E. Henson
1,297.06
Edward B. Quinan
1,200.00
The Lincoln National
Life Insurance Co.
923.00
Associates Discount
Corporation
1,819.92
General Motors Accept-
ance Corporation
1,380.97
Capital expenditures: 6645 Corporation
1,730.06
Keyes Company
3,100.00
Peoples National Bank
of Commerce
8,308.03
Emmanuel Levenson,
Attorney
425.00
Total Expenditures
$98,200.94
*73 Dixon's accounts with the following financial institutions were increased (decreased) by the following amounts from January 1, 1970, to December 31, 1970: Central Bank & Trust Company
$5,044.04
Biscayne Federal Savings &
Loan Association
179.30
Chase Manhattan Bank
368.07
Peoples National Bank of Commerce
(1,032.37)
During the course of an audit of his 1970 return, Dixon told an Internal Revenue Service auditor, Lois Lowney (Lowney), that he maintained a cash receipts journal for that year, but Dixon failed to produce such a jurnal at any time during or after the examination. In reconstructing his 1970 income by the bank deposits plus cash expenditures method, Lowney asked Dixon whether he had any cash on hand at the beginning or the end of that year. Lowney defined "cash on hand" as any form of cash he might have in any place other than bank accounts, e.g. cash in his pocket, cash in a hidden spot, or emergency cash. He replied that he had about 10 dollars. At a subsequent interview, after Dixon had been informed of Lowney's finding that he had understated a substantial amount of income for 1970, he informed Lowney that he did in fact have an amount *74 of cash that he kept in a secret place at his home. Tax auditor Martin Knopp (Knopp) was in charge of auditing Dixon's 1968 and 1969 returns. During the course of this audit he likewise asked Dixon whether he had any cash on hand at the beginning or end of those years. Knopp defined "cash on hand" as all cash other than cash in banks, whether in his pocket, buried in the backyard, in a cookie jar, or under the mattress. Dixon replied that he had none. At a subsequent interview, after Knopp had informed Dixon that he had found additional unreported income for 1968 and 1969, Dixon replied that as of January 1 of each year from 1967 through 1970 he had the following amounts of cash hidden in a secret place: Year
Amount of Cash
1967
$25,000
1968
19,000
1969
15,000
1970
9,500 Dixon refused to produce the cash or tell Knopp where the cash was hidden. OPINION By utilizing the bank deposits plus cash expenditures method of reconstructing petitioner's income for 1970, respondent determined the deficiency at issue in the instant case. Where, as here, a taxpayer fails to produce adequate books and records for a taxable year, it is well-settled that respondent *75 may employ this method in order to reconstruct the taxpayer's income. Gromacki v. Commissioner,361 F. 2d 727 (7th Cir. 1966); John Harper,54 T.C. 1121 (1970). If the use of this method results in a determination by respondent that a taxpayer's income for a particular year was understated, the burden of proving respondent's determination to be erroneous lies with the taxpayer. Thomas B. Jones,29 T.C. 601 (1957). In the instant case, we find that petitioner has failed to sustain his burden, and we hold for respondent. Dixon does not dispute the figures used by respondent to reconstruct his income for the year at issue nor does he contest the theory or actual calculations that were performed in order to arrive at the determined deficiency. His sole defense is that as of January 1, 1970, he had cash hoards of the following amounts: (1) $60,000 in New York, (2) $45,000 in Monticello, Florida, and (3) $20,000 in Miami, Florida. We find Dixon's explanation flawed by numerous inconsistencies and simply incapable of belief. His statements concerning the amount and location of the alleged cash hoards were vague, evasive and contradictory. *76 On two separate occasions he told respondent's tax auditors that he had no cash outside of bank accounts, only to recant and offer his cash hoard explanation after finding out that both auditors had discovered substantial amounts of unreported income. Even these belated explanations were contradictory. Dixon told Knopp that as of January 1, 1970, he had a total cash hoard of $9,500, while he testified at trial that, as of that date, his cash hoard amounted to $125,000. In addition, even though he claimed that he continued to maintain his cash hoards, he never told respondent's agents or counsel the exact location of such hoards or produced the cash for their inspection. Apparently, he did offer to show the alleged money to respondent's counsel, but only on the condition that counsel would state in writing that, upon seeing the money, he would drop the instant case. Obviously, respondent's counsel could not enter into such an agreement. Furthermore, the manner in which petitioner conducted his business affairs and his financial status over the years belie the existence of a cash hoard in the amount claimed. During 1970 petitioner was indebted to and made payments to five separate *77 creditors. We fail to understand why petitioner would incur such debts if he had such a large cash reserve. Also, Dixon apparently had no inherent distrust of banks which might explain the maintenance of a cash hoard since during 1970 he had accounts at four separate financial institutions. Finally, we note that petitioner's earning capacity over his productive years of employment, as especially evidenced by the adjusted gross income reported on his 1965-1970 returns, certainly does not evidence any capacity to save the vast cash sums he allegedly maintained. In short, we find Dixon's offer of proof concerning his alleged cash hoard to be wholly unsatisfactory. He testified that there were three individuals who knew of the existence of his cash hoard, yet he did not ask any of these individuals to testify on his behalf. He argues that respondent's counsel likewise was aware of the existence of these individuals and that respondent's counsel's failure to call such individuals should somehow weaken the Government's case. Petitioner is mistaken. The burden of overcoming the presumptive correctness of respondent's determination falls upon him and not the respondent. If petitioner *78 had three witnesses who could support his cash hoard story, it was his privilege, not respondent's duty, to secure their testimony. We found the testimony of the one witness petitioner did call, his brother, to be too vague to add anything to petitioner's case. Respondent has also determined that petitioner overstated by $495 a depreciation deduction he took on his 1970 return. The burden of proof again lies with petitioner and, he having offered none on this matter, we hold for respondent. Rule 142, Tax Court Rules of Practice and Procedure. Because we have held for respondent on the understatement of income and depreciation issues and because petitioner has not contested respondent's mathematical computations on the medical expense adjustment, we hold for respondent on that issue. The parties have stipulated that petitioner's 1970 return was not filed until May 10, 1971. Respondent has sought an addition to tax of $464.70 under section 6651(a) for failure to timely file his 1970 return and an addition to tax of a like amount under section 6653(a) for underpaying his 1970 tax due to negligence or intentional disregard of rules and regulations. With regard to both asserted *79 additions to tax petitioner bears the burden of proof. Electric & Neon, Inc.,56 T.C. 1324, 1342 (1971), C. Fink Fischer,50 T.C. 164, 177 (1968); Vaira v. Commissioner,444 F. 2d 770 (3d Cir. 1971); Mark Bixby,58 T.C. 757, 791 (1972). Petitioner has failed to offer any evidence on either of the asserted additions to tax and, accordingly, we hold that petitioner is liable for both such additions to tax in the respective amounts claimed by respondent. Decision will be entered for respondent.* Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954.↩