ROBERT MONTANO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Montano v. Commissioner
Docket No. 19494-83.
United States Tax Court
T.C. Memo 1986-192; 1986 Tax Ct. Memo LEXIS 415; 51 T.C.M. (CCH) 1003; T.C.M. (RIA) 86192; May 14, 1986. Robert Montano, pro se. Steven Mather and Harry Morton Asch, for the respondent. CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: Respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1978 in the amount of $21,523.00 and an addition to tax under section 6653(b) [1] in the amount of $10,322.94. After concessions, the sole issue for decision is whether petitioner is liable for the addition to tax under section 6653(b). *416 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner, Robert Montano, resided in Montebello, California, when he filed his petition in the instant case. Petitioner began working as a real estate salesman in 1966 and became a real estate broker in 1968. Beginning in 1974 and continuing throughout 1978 and thereafter, petitioner was employed by A. P. Lopez, an individual doing business as A. P. Lopez Realty. A. P. Lopez Realty was engaged in the business of acquiring, rehabilitating and reselling pieces of improved real property. Petitioner's duties as an employee of A. P. Lopez Realty included commission sales as well as the finding and acquiring of real properties for resale. During 1978, petitioner earned and received commissions on sales of $40,369.00 which sum was set forth by A. P. Lopez Realty on a Form 1099. Petitioner reported only this amount as gross income on his 1978 Federal income tax return. Petitioner filed an amended 1978 Federal income tax return, dated June 2, 1980, which again reported only the commission income but claimed *417 business and itemized deductions. In addition to this commission income, petitioner also received income in the amount of $26,532.96 for his services in locating and arranging for the acquisition of various properties on behalf of A. P. Lopez Realty (these amounts are hereinafter referred to as finders fees). Mr. Lopez would typically take and hold title to these properties. Upon resale of the properties, the agreed arrangement was that Mr. Lopez received 50 percent of the profit and whoever located the properties received the other 50 percent. Richard Quesada, another employee of A. P. Lopez Realty, had a separate agreement with petitioner to split their shares between them. For each property sale, settlement sheets were drawn up by Carlos Sinde, a bookkeeper employed by A. P. Lopez Realty from 1969 to 1980. These sheets set forth costs incident to the purchase, management, rehabilitation and sale of each property, total rental income received and the proceeds of sale. The settlement sheets computed a net profit figure for the entire transaction and reflected the portion of the net profit allocable to petitioner. The settlement sheets conventionally were captioned with a *418 title including the legend, "Joint Venture. A. P. Lopez - Robert Nontano - Richard Quesada." %mr. Sinde would prepare these statements after receiving the necessary information from Mr. Lopez. The accounting should have been completed within two months after escrow of the sale but the statements were often prepared six months and up to a year later for some. However, the statements were prepared within the time which Mr. Lopez had to file his tax return including extensions. After the settlement sheets were prepared, Mr. Sinde would give a copy to petitioner and would make entries on the employee ledger cards crediting petitioner with the finders fees. The ledger cards were available to petitioner. Any disagreement petitioner may have had with the amounts shown on the sheets was that the figures were too low and that he was entitled to more income. The table below (which was agreed to by the parties) identifies the property sold, the closing date, the amount of petitioner's share and the date when the credit was entered on the employee ledger card. Ledger
Escrow
Montano
Joint
Card
Property
close
Share
Exh.
Credit
3007 Sierra St., L.A.
02/10/78
$ 1,149.45 4-D
05/25/79
130 N. Arizona, L.A.
03/10/78
3,860.35 5-E
09/30/78
7012-7018 Middleton, H.P.
05/12/78
7,961.68 6-F
05/25/79
7019 Middleton, H.P.
05/26/78
6,062.29 7-G
04/01/79
6713 Malabar St., H.P.
06/22/78
1,235.02 8-H
04/01/79
6518 Malabar St., H.P.
08/22/78
2,348.35 9-I
04/01/79
6210 Malabar St., H.P.
09/06/78
2,028.21 10-J
04/01/79
6827 Georgia Ave., Bell
10/18/78
1,079.18 11-K
04/01/79
7016 Malabar St., H.P.
10/30/78
(1,700.74)
12-L
04/01/79
8432 Chestnut St., S.G.
11/14/78
2,509.17 13-M
05/25/79
$26,532.96
*419 No portion of the finders fees was reported as gross income by petitioner in either the original or the amended tax returns filed by petitioner. In some cases, the properties acquired by A. P. Lopez were resold in exchange for promissory notes representing all or a portion of the purchase price above pre-existing financing. These notes were in some cases held for collection and in other cases the notes were sold after a period of time to third parties. In certain cases, petitioner was allocated an interest in such notes, and payments received either from monthly principal and interest collections or from resale of the notes would be allocated to petitioner. The amounts received from the notes receivable were credited monthly on the ledger cards. The total of cash loan payment proceeds received by A. P. Lopez Realty in 1978 and allocable to petitioner was $9,017.04. In addition to the aforesaid income amount, petitioner was credited on the 1978 employee ledger cards with certain other specific items of income totalling $4,075.96. Petitioner was entitled to cash draws based on the amount of anticipated profits prior to the completion of the accounting work. These cash draws *420 were noted on the employee ledger cards as debits to petitioner's account. Petitioner received cash draws totalling $72,220 in 1978 which amount roughly coincided with the amount of commission income, finders fees and collection for notes receivable. Petitioner failed to keep or maintain adequate records of his dealings with A. P. Lopez Realty as well as records of his own outside property interests. During the audit which began in 1981, petitioner did not furnish the agent with any of the settlement sheets. Petitioner represented to the agent that he did not have a joint checking account with Quesada when in fact he did. Petitioner also represented to the agent that he did not have a power of attorney for Quesada to deal with the real property when in fact he did possess such a power of attorney. Petitioner owns an interest in approximately 20 properties outside of his relationship with A. P. Lopez Realty. Petitioner rarely holds title to any of these properties in his own name ostensibly because of his poor credit rating. The underpayment of tax for the year 1978 is due to fraud with intent to evade taxes. OPINION Petitioner has conceded the adjustments to taxable income *421 made by respondent. The sole issue remaining for decision is whether petitioner is liable for the addition to tax under section 6653(b) for fraud. Respondent bears the burden of proving, by clear and convincing evidence, that there is an underpayment of tax and that some part of this underpayment is due to fraud. Section 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure. This burden is met if it is shown that the taxpayer intended to conceal, mislead or otherwise prevent the collection of such taxes. Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983). The presence or absence of fraud is factual, to be determined upon consideration of the entire record. Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud is never presumed. Beaver v. Commissioner,55 T.C. 85 (1970). Fraud may, however, be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. The taxpayer's entire course of conduct may establish the fraudulent intent. Stone v. Commissioner,56 T.C. 213, 223-224 (1971). *422 Respondent has carried his burden of proving that there was an underpayment of tax for 1978. The record is clear, and petitioner has in fact conceded, that petitioner received all the income respondent had determined in the notice of deficiency in an amount sufficient to produce an underpayment for 1978. Respondent has also carried his burden of proving that the underpayment was due to fraud. Petitioner received but did not report a total of $39,625.86 ($26,532.96 + $13,092.90), an amount over 100 percent of the amount of income that he did report. Petitioner's only excuse for the understatement of income is that he did not receive the necessary information from A. P. Lopez Realty to calculate his tax. Petitioner testified that even when he filed his amended return in June 1980 he did not have the settlement sheets which computed his finders fees.Yet the parties stipulated that petitioner's finders fees were posted on the employee ledger cards no later than May 1979. The entries on the ledger cards were made only after the settlement sheets were completed. The income from the collections on the notes receivable were posted monthly on the ledger cards. Both the settlement sheets *423 and the ledger cards were readily available to petitioner. Petitioner's explanation is contrary to the evidence and totally unpersuasive. Such a deliberate omission of income is indicative of fraudulent intent on the part of petitioner. Smith v. Commissioner,32 T.C. 985, 987 (1959). According to petitioner's own testimony, he failed to keep or maintain adequate records of his dealings with A. P. Lopez Realty as well as records of his own outside property interests as required by section 6001. Failure to keep such records is an indication of fraud. Estate of Upshaw v. Commissioner,416 F.2d 737 (7th Cir. 1969). During the investigation, which commenced in 1981, petitioner provided misleading statements to respondent's agent concerning his bank accounts and his property dealings. He failed to furnish the agent with the settlement sheets. Petitioner's explanation again was that they were not available to him. The evidence is otherwise. Such conduct in providing false and misleading statements to a revenue agent is also indicative of fraud. Gromacki v. Commissioner,361 F.2d 727 (7th Cir. 1966). In addition, petitioner concealed *424 his ownership of property by holding title in the names of others. Such concealment is also evidence of fraud. Furnish v. Commissioner,262 F.2d 727, 729 (9th Cir. 1958). Based on the foregoing, we hold that respondent has established by clear and convincing evidence that the underpayment of tax for year 1978 was due to fraud with intent to evade taxes and, therefore, respondent's determination of an addition ot tax under section 6653(b) is sustained. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩