MARY G. LANE, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Lane v. Commissioner
Docket Nos. 10430-79, 10431-79, 10432-79.
United States Tax Court
T.C. Memo 1986-306; 1986 Tax Ct. Memo LEXIS 303; 51 T.C.M. (CCH) 1502; T.C.M. (RIA) 86306; July 23, 1986. Douglas A. Lane, pro se. Howard P. Levine, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined deficiencies and additions to tax in petitioners' Federal income taxes as follows: Docket No. 10430-79 -- Mary G. Lane [2]
Additions to Tax
Year
Deficiency
Sec. 6653(a) [3]
Sec. 6651(a)(1)
1972
$61,907.71
$3,095.35
$15,476.75
Docket No. 10432-79 -- Douglas A. Lane
Additions to Tax
Year
Deficiency
Sec. 6653(a)
Sec. 6651(a)(1)
1972
$61,907.71
$3,095.35
$15,476.75
*305 Docket No. 10431-79 -- Douglas A. Lane [4]
Additions to Tax
Year
Deficiency
Sec. 6653(a)
Sec. 6651(a)(1)
1973
$18,834.89
$941.70
$4,708.50
1974
634.36
31.71
158.59
1975
3,843.90
192.19
960.97
1976
14,333.95
716.69
3,583.25
After concessions, the issues for decision are: (1) whether Douglas A. Lane (hereinafter petitioner) understated his taxable income for the years 1972, 1973, 1975, and 1976; (2) whether assessment of the deficiency and additions to tax with respect to the 1972 taxable year is barred by the applicable statute of limitations; (3) whether petitioner is liable for the section 6651(a)(1) addition to tax for his failure to timely file income tax returns for the years 1972, 1973, 1975, *306 and 1976; and (4) whether any part of petitioner's underpayments of tax for the years in issue were due to negligence or intentional disregard of rules and regulations pursuant to section 6653(a). FINDINGS OF FACT Petitioners resided in Bristol, Tennessee when they filed their petitions in these cases. They filed a joint Federal income tax return for the 1972 taxable year with the Internal Revenue Service Center in Memphis, Tennessee on March 6, 1974. Petitioners failed to file Federal income tax returns for the 1973, 1975, and 1976 taxable years. During the years 1972, 1973, and 1974, petitioner operated a sole proprietorship under the name of Bristol Auto Salvage, which engaged in selling auto salvage goods. He failed to maintain, or to submit for examination by respondent, complete and adequate books and records detailing his income-producing activities. Respondent determined petitioner's income for the 1972, 1973, 1975, and 1976 taxable years on the basis of the bank deposits method of reconstructing income. In addition, for 1972, 1973, and 1976, cash expenditures were used, in addition to bank deposits, to determine petitioner's income. Furthermore, the general ledger *307 for Bristol Auto Salvage was utilized by respondent to determine petitioner's gross receipts and expenses for the 1973 taxable year. During 1972, petitioner maintained a checking account at the Bank of Virginia (formerly Washington Trust Bank), account number 30-557-3. He deposited $116,674.29 into this checking account during 1972. In addition, he maintained a checking account until August 1972 at the Bank of Virginia (account number 12-567-4) in the name of Bristol Auto Salvage. Petitioner deposited $104,519.08 into that account during the 1972 taxable year. On July 27, 1972, he opened a checking account at the Virginia National Bank (account number 171 3625 4) in the name of Bristol Auto Salvage. The account was maintained through the end of 1972, during which year petitioner deposited $87,628.08 into that account. The following deposits, made by petitioner in 1972, were identified and allowed by respondent in the notice of deficiency as being fron non-taxable sources: Date
Deposits
Transfers between accounts: Bank of Virginia - account number 30-557-3: 01/03/72
$ 400   01/11/72
1,700   01/21/72
2,500   02/22/72
1,900   03/13/72
600   04/17/72
1,000   10/31/72
150   12/01/72
3,000   $11,250   Bank of Virginia - account number 12-567-4: 01/17/72
$ 500   02/07/72
650   02/15/72
3,500   02/17/72
750   03/23/72
150   04/21/72
250   07/10/72
500   07/24/72
350   $ 6,650   Virginia National Bank - account number 171 3625 4: 08/08/72
$ 1,000   09/26/72
18,000   10/05/72
400   $19,400   $37,300   Returned check redeposited: Bank of Virginia - account number 30-557-3: 03/10/72
$ 2,191.56
Bank Loans: Virginia National Bank - account number 171 3625 4: 07/27/72
$20,000.00
Total Non-taxable deposits:
$59,491.56
*308 Furthermore, respondent now concedes that the following deposits made by petitioner in 1972 are, in addition to those identified and allowed in the notice of deficiency, from nontaxable sources: Date
Explanation
Deposits
Bank of Virginia - account
number 30-557-3: 03/31/72
CNA Insurance
$14,975
Virginia National Bank -
account number 171 3625 4: 10/09/72
$ 1,492
10/30/72Z
4,750
Total Additional
Non-taxable deposits
$21,217
Petitioner's gross income for the 1972 taxable year, as determined by respondent from the checking accounts maintained or controlled by him, is $240,064.81, computed as follows: Name
Deposits
Bank of Virginia - account number 30-557-3: Douglas A. Lane
$116,674.29 Bank of Virginia - account number 12-567-4: Bristol Auto Salvage
$104,519.08 Virginia National Bank - account number 171 3625 4: Bristol Auto Salvage
$ 87,628.08 Total deposits
$308,821.45 Less: Non-taxable deposits
(59,491.56)
$249,329.89 Plus: Cash expenditures
11,951.92 Gross income per statutory notice
$261,281.81 Less: Concessions at trial
(21,217.00)
Gross income:
$240,064.81 *309 The amount of gross income stated in petitioner's 1972 tax return was $108,542.18, consisting of the following: Amounts
Gross receipts from Bristol Auto Salvage
$ 72,773.05
(prior to diminution for cost of goods
sold)
Wages
18,316.63
Rents
17,452.50
Gross Income [stated in Return]
$108,542.18
Petitioner maintained a checking account at the Bank of Virginia (account number 30-557-3), which was closed on February 16, 1973. He made deposits totaling $12,585.62 into his account at the Bank of Virginia during the 1973 taxable year. Additionally, on March 20, 1973, petitioner opened a checking account at the Tri-City Bank and Trust Company (account number 040-270-1), which remained active through October 9, 1974. He deposited $99,231.13 into his Tri-City account during the 1973 taxable year. For 1973, the bank records for Bristol Auto Salvage were inadequate and incomplete. Consequently, respondent determined the 1973 gross receipts for Bristol Auto Salvage from the general ledger maintained by petitioner for that business. Gross receipts for Bristol Auto Salvage, as reflected in the general ledger for the 1973 taxable year, totaled $114,917.60. *310 The following deposits, made by petitioner in 1973, were identified and allowed by respondent in the notice of deficiency, as being from non-taxable sources: Date
Deposits
Transfers between accounts: Tri-City Bank and Trust Company -
account number 040-270-1: 05/01/73
$ 500.00
10/01/73
500.00
12/06/73
1,000.00
$ 2,000.00
Per ledger - Bristol Auto Salvage: 02/22/73
$25,227.40
03/19/73
2,300.00
09/19/73
2,000.00
10/31/73
3,000.00
11/05/73
3,000.00
12/05/73
1,700.00
12/14/73
1,000.00
12/17/73
2,000.00
12/27/73
1,700.00
$41,927.40
$43,927.40
Returned check redeposited: Bank of Virginia - account number 30-557-3: 11/23/73
$ 700.00
Bank Loans: Tri-City Bank and Trust Company -
account number 040-270-1: 06/27/73
$14,363.17
09/24/73
2,962.99
$17,326.16
Total non-taxable deposits:
$61,953.56
In addition, respondent concedes that the following deposit made by petitioner in 1973 is, in addition to those identified and allowed in the notice of deficiency, from a non-taxable source: Date
Deposit
Tri-City Bank and Trust Company -
account number 040 270 1: 12/26/73
$750.00
*311 Petitioner's gross income for 1973, as determined by respondent from the checking accounts maintained by petitioner and from the general ledger maintained by him for Bristol Auto Salvage, is $181,735.07, computed as follows: Name
Deposits
Bank of Virginia - account number 30-557-3: Douglas A. Lane
$ 12,585.62 Tri-City Bank and Trust Company -
account number 040 270 1: Doug Lane
$ 99,231.13 General Ledger: Bristol Auto Salvage
114,917.60 Total deposits
$226,734.35 Less: Non-taxable deposits
(61,953.56)
$164,780.79 Plus: Cash expenditures
17,704.28 Gross income per statutory notice
$182,485.07 Less: Concessions at trial
(750.00)
Gross income
$181,735.07 In addition, petitioners' taxable income for 1973, as determined by respondent, is $41,749.18, computed as follows: Gross income
$181,735.07 Less: Business expenses
(136,735.89)
Standard deduction
( 1,000.00)
Personal exemptions
( 2,250.00)
$ 41,749.18 On October 18, 1974, petitioner opened a checking account at the First Tennessee National Bank, account number 106 6750478. This account remained *312 active through May 18, 1976, and during the 1975 taxable year, petitioner made deposits into this account totaling $59,728.93. The following deposits, made by petitioner in 1975, were identified by respondent as being from non-taxable sources: Date
Deposits
Returned checks redeposited: First Tennessee Bank -
account Number 106 6750478: 06/16/75
$ 750.00
11/24/75
300.00
$1,050.00
Proceeds from insurance: First Tennessee Bank -
account number 106 6750478: 01/17/75
$2,326.22
Total non-taxable deposits:
$3,376.22
In addition, respondent concedes that the following deposits in 1975 are, in addition to those identified and allowed in the notice of deficiency, from non-taxable sources: Date
Payor
Deposits
First Tennessee Bank -
account Number 106 6750478: 04/29/75
Leonard Hall
$ 125.00
05/12/75
Todd Real Estate Co.
1,300.00
12/01/75
Inez Lane
1,200.00
Total additional non-taxable deposits:
$2,625.00
Petitioner's gross income for the 1975 taxable year, as determined by respondent from the checking accounts maintained by petitioner, is $53,727.71, computed as follows: *313 Deposits
First Tennessee Bank -
account number 106 6750478
$59,728.93 Less: Non-taxable deposits
(3,376.22)
Gross income per statutory notice
$56,352.71 Less: Concessions at trial
(2,625.00)
Gross income
$53,727.71 In addition, petitioner's taxable income for 1975, as determined by respondent, is $12,030.53, computed as follows: Gross income
$53,727.71 Less: business expenses
(41,697.18)
Taxable income
$12,030.53 During the 1976 taxable year, petitioner deposited $2,735.62 into the checking account that he maintained at the First Tennessee National Bank (account number 106 6750478). Additionally, on April 16, 1976, petitioner opened a checking account at the Dominion National Bank (account number 237-664-80) which remained active through January 6, 1977. During the 1976 taxable year, petitioner deposited $47,230.83 into his Dominion National checking account. The following deposits, made by petitioner in 1976, were identified by respondent in the notice of deficiency as being from non-taxable sources: Date
Deposits
Bank credits: First Tennessee Bank -
account number 106 6750478: 01/02/76
$ 10.00
01/02/76
10.00
01/05/76
565.00
$ 585.00
Proceeds from insurance: Dominion National Bank -
account number 237 664 8: 04/20/76
$1,208.47
Total non-taxable deposits:
$1,793.47
*314 In addition, respondent concedes that the following deposits in 1976 are, in addition to those identified and allowed in the notice of deficiency, from non-taxable sources: Date
Payor
Deposits
First Tennessee Bank -
account number 106 6750478: 05/13/76
Frank Cava Judgment
$1,039.25
10/18/76
State of Tennessee
25.00
Total additional non-taxable deposits
$1,064.25
Petitioner's gross income for the 1976 taxable year, as determined by respondent from the checking accounts maintained by petitioner, is $50,399.97, computed as follows: Name
Deposits
First Tennessee Bank -
account number 106 6750478: Douglas A. Lane
$ 2,735.62 Dominion National Bank -
account number 237 664 8: Doug Lane
$47,230.83 Total deposits
$49,966.45 Less: Non-taxable deposits
(1,793.47)
$48,172.98 Plus: Cash expenditures
3,291.24 Gross income per statutory notice
$51,464.22 Less: Concessions at trial
(1,064.25)
Gross income
$50,399.97 In addition, petitioner's taxable income for 1976 as determined by respondent, is $32,763.47, computed as follows: Gross income
$50,399.97 Less: business expenses
(15,486.50)
standard deduction
( 1,400.00)
personal exemption
(750.00)
Taxable income
$32,763.47 *315 In order to establish that petitioner omitted in excess of 25 percent of the amount of gross income stated on his 1972 tax return for purposes of section 6501(e)(1)(A), respondent filed a motion on November 20, 1979 pursuant to Rule 37(c) [5], requesting entry of an order that the undenied affirmative allegations of fact contained in paragraphs 7(a)(1) to 7(a)(13), inclusive, of respondent's answer, be deemed admitted for that year. In such paragraphs, respondent alleged as follows: 7. FURTHER ANSWERING the petition, and as a defense to the assignment of error that the statute of limitations bars the assessment and collection of the deficiencies in income taxes due from the petitioner for the taxable year 1972, the respondent alleges: (a) The income tax due from the petitioner for the taxable year 1972 may be timely assessed under the provisions of section 6501(e)(1)(A) of the Internal Revenue Code of 1954, in support of which the respondent alleges: (1) The petitioner and her husband filed a joint income tax return for the taxable year 1972 on March 6, 1974. (2) During the taxable year 1972 the petitioner's husband was engaged in the business of selling *316 auto salvage under the name of Bristol Auto Salvage and also was engaged in the business of renting property. (3) During the taxable year 1972 the petitioner's husband derived unreported taxable income from the aforementioned business activities. (4) During the taxable year 1972 the petitioner's husband failed to maintain, or to submit for examination by the respondent, complete and adequate books of account and records of his income-producing activities as required by applicable provisions of the Internal Revenue Code of 1954 and the regulations promulgated thereunder. (5) The records maintained by or on behalf of the petitioner and her husband for the taxable year 1972 were inadequate in that they were incomplete and failed to disclose all receipts and did not properly reflect correct taxable income of the petitioner. (6) Although requested to do so, the petitioner-husband failed and refused to make all of his records which he did maintain available to the agents of the respondent. (7) The amount of gross income stated in the income tax return filed by the petitioner and her husband for the taxable year 1972 was $108,542.18, consisting of the following: Gross receipts from Bristol
Auto Salvage (prior to diminution
for cost of goods sold)
$ 72,773.05
Wages
$ 18,316.63
Rents
17,452.50
Gross income stated in return
$108,542.18
*317 (8) The respondent has determined that petitioner's gross income and taxable income for the taxable year 1972 on the basis of the bank deposits method. (9) The amounts of petitioner's gross income, the gross income reported on her income tax return, and the understatement of gross income for the taxable year 1972 are as follows: Gross deposits into bank: Bank of Virginia #30-557-03
$116,674.29 Bank of Virginia #12-567-4
104,519.08 Virginia National Bank
#171-3625-4
87,628.08 Total gross deposits
$308,821.45 Less non-taxable deposits: Transfers between accounts
$ 37,300.00 Returned checks redeposited
2,191.56 Bank loans
20,000.00 Total non-taxable deposits
(59,491.56)
Total net deposits from sales
$249,329.89 Taxes withheld from wages
$ 4,152.22 Business expenses paid by cash
7,799.70 Total gross receipts
$261,281.81 Less amounts reported on return
(108,542.18)
Unreported gross income
$152,739.63 (10) In addition to the amounts reported on the return, petitioner and her husband received during the taxable year 1972 the amount of $152,739.63 which was not included in the gross income *318 stated in the return filed by the petitioner for said year and there was not disclosed on the return or in a statement attached thereto the fact that this amount was received during said year. (11) The $152,739.63 received by the petitioner and her husband during 1972 is properly includible in gross income for the taxable year 1972. (12) The $152,739.63 of gross income which petitioner received and which was omitted from the return filed by the petitioner for the taxable year 1972 is in excess of 25 percent of the gross income stated in said return. (13) The statutory notice determining the deficiency in income tax against the petitioner for the taxable year 1972 was sent to the petitioner by certified mail on April 15, 1979, which date was prior to the expiration of the six-year period of limitations applicable under section 6501(e)(1)(A) of the Internal Revenue Code of 1954. Petitioners did not reply to respondent's motion and, on January 9, 1980, this Court entered an order granting respondent's motion and deeming admitted "the undenied affirmative *319 allegations of fact contained in paragraphs 7(a) of respondent's answer." OPINION Issue 1. Income Tax Deficiencies
The first issue for decision is whether petitioner had unreported income during the 1972, 1973, 1975, and 1976 taxable years. Respondent determined the amount of the deficiencies for each of the years in issue by using the bank deposits-cash expenditures method of reconstructing income. A taxpayer is required to maintain records sufficient to show whether or not he is liable for Federal income taxes. Section 6001.The records maintained by petitioner are insufficient to permit an accurate computation of petitioners' income tax liability for the years in issue. It is well-established that where the taxpayer fails to maintain adequate records, the Commissioner may prove the existence and amount of unreported income by any method that will, in his opinion, clearly reflect the taxpayer's income. Section 446(b); Holland v. United States,348 U.S. 121, 130-132 (1954); Harper v. Commissioner,54 T.C. 1121 (1970). The use of the bank deposits method has long been an accepted method of reconstructing a taxpayer's income. Nicholas v. Commissioner,70 T.C. 1057, 1065 (1978); *320 Estate of Mason v. Commissioner,64 T.C. 651, 656 (1975), affd. 566 F.2d 2 (6th Cir. 1977). In a bank deposits reconstruction of the taxpayer's income, the Commissioner's agents review and analyze the taxpayer's bank records for the years in issue. The premise underlying this reconstruction method is that, absent some explanation, a taxpayer's bank deposits represent taxable income. The total of all deposits is determined by the Commissioner for each year in question to arrive at the taxpayer's gross income. An adjustment is then made to eliminate deposits that reflect non-income items such as gifts, loans, and transfers between the taxpayer's various bank accounts. The Commissioner will also make a further adjustment for the taxpayer's ascertainable business expenses, deductions, and exemptions. See Percified v. United States,241 F.2d 225 (9th Cir. 1957). In these cases, respondent used a variation of the bank deposits method whereby the taxpayer's cash expenditures are added to his bank deposits in order to determine gross income. Gromacki v. Commissioner,361 F.2d 727, 728-729 (7th Cir. 1966); Harper v. Commissioner,54 T.C. 1121, 1129 (1970). *321 [6] Where respondent has employed this method in his determination of the deficiencies, the burden of proof rests with petitioner to show that such determination was erroneous. Rule 142(a); Estate of Mason v. Commissioner,supra at 657; Harper v. Commissioner,supra at 1129. When, in such a case, petitioner has the burden of proof, the Commissioner need not prove a likely source for the unreported income. Estate of Mason v. Commissioner,supra at 657. Nor is he required to prove that all deposits constitute taxable income. Gemma v. Commissioner,46 T.C. 821 833 (1966). The burden of showing duplications is on the taxpayer. Zarnow v. Commissioner,48 T.C. 213, 216 (1967). During 1972, 1973, and 1974, petitioner operated a sole proprietorship under the name of Bristol Auto Salvage, engaging in the business of selling auto salvage. During *322 the years in issue numerous checking accounts were maintained by petitioner at several different banking institutions. Although petitioner reported only $108,542.18 in gross income on his 1972 income tax return, total deposits to the three checking accounts maintained by him in 1972 totaled $308,821.45. Likewise, gross income for the 1973 taxable year, as determined by respondent from the checking accounts maintained by petitioner for Bristol Auto Salvage, totaled $226,734.35. For the 1975 and 1976 taxable years, the total deposits to petitioner's checking accounts were $59,728.93 and $49,966.45, respectively. Although he had substantial sources of income during the taxable years in issue, he substantially understated gross income on his 1972 income tax return and failed to file income tax returns for the years 1973, 1975, and 1976. Large and frequent deposits were made to petitioner's bank accounts during the years in issue, but no explanation supporting a non-taxable source has been offered by petitioner. In addition, although petitioner would not stipulate to his own bank records, he conceded their authenticity at trial. He submitted four exhibits at trial to refute respondent's *323 deficiency determinations. The first two exhibits, however, relate to a year not in controversy. With respect to the third exhibit, the record was left open by the Court for 30 days in order to allow petitioner an opportunity to verify the basis of the property purportedly sold at cost during one of the years in issue. To our knowledge, he has not provided such information. As to the fourth exhibit, respondent conceded at trial that the amount in question represented a non-taxable source of income from insurance proceeds. Although we are generally sensitive to the plight of the pro se taxpayer in a complicated reconstruction of income matter such as this, petitioner simply has not met his burden of proving that respondent's determinations are in error. Thus, based on the substantial amounts of unexplained bank deposits and the inadequacy of petitioner's records, we sustain the deficiencies in income taxes determined by respondent for the years in issue. [7]
*324 Issue 2. Statute of Limitations
The 1972 Federal income tax return was filed by petitioners on March 6, 1974. The statutory notice of deficiency with respect to that taxable year was not issued until April 13, 1979, well after the expiration of the normal 3-year statutory period during which the Commissioner must assess the tax. Secton 6501(a). An exception to the normal 3-year statute of limitations is found in section 6501(e)(1)(A) which provides as follows: (e) Substantial Omission of Items. -- Except as otherwise provided in subsection (c) -- (1) Income Taxes. -- In the case of any tax imposed by subtitle A -- (A) General Rule. -- If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. For purposes of this subparagraph -- (i) In the case of a trade or business, the term "gross income" means the total of the amounts received or accrued from the sale of goods or services (if such amounts *325 are required to be shown on the return) prior to diminution by the cost of such sales or services; and (ii) In determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item. Thus, the Commissioner has a 6-year period for assessment on income tax returns from which an amount in excess of 25 percent of the gross income reported has been omitted. Respondent has the burden of proving the facts necessary to show that the 6-year statute of limitations period applies. Bardwell v. Commissioner,38 T.C. 84, 92 (1962), affd. 318 F.2d 786 (10th Cir. 1963); Reis v. Commissioner,1 T.C. 9, 13 (1942). Therefore, respondent must establish that petitioners omitted an amount in excess of 25 percent of the gross income stated on the 1972 tax return. We find that respondent has sustained his burden of proof. In his answer, respondent affirmatively alleged facts supporting an omission from gross *326 income of $152,739.63, which was well in excess of 25 percent of the gross income stated ($108,542.18) in petitioner's 1972 tax return. Pursuant to Rule 37(c), respondent timely filed a motion requesting entry of an order that certain undenied allegations of fact contained in his answer be deemed admitted. By our order dated January 9, 1980, the undenied affirmative allegations of facts contained in paragraph 7(a) of respondent's answer were deemed admitted. The facts herein clearly satisfy respondent's burden of proving a 25 percent omission for purposes of section 6501(e). [8] Accordingly, we hold for respondent on this issue. Issue 3. Section 6651(a)(1) Additions to Tax
The next issue for decision is whether petitioner is liable for the additions to tax under section 6651(a)(1) for failing to timely file his income tax returns for the years in issue. [9] Petitioner's 1972 income tax return was due on or before April 15, 1973. *327 Section 6072(a). However, two extensions of time for filing the return to September 15, 1973, were secured by petitioner. He ultimately filed his 1972 income tax return on March 6, 1974, which was more than 5 months after the due date. For the taxable years 1973, 1975, and 1976, petitioner failed to file income tax returns, although he was required to file such returns pursuant to section 6012. *328 Petitioner bears the burden of proving that his failure to timely file his tax returns for the years in issue was "due to reasonable cause and not due to willful neglect," within the meaning of section 6651(a). Rule 142(a); Electric & Neon, Inc. v. Commissioner,56 T.C. 1324, 1342 (1971), affd. without published opinion 496 F.2d 876 (5th Cir. 1974). He offered no explanation for the delinquent filing of his 1972 return or for his failure to file returns for the 1973, 1975 and 1976 taxable years. Accordingly, we sustain respondent's determination that petitioner is liable for the additions to tax under section 6651(a)(1) for all of the years in issue. Issue 4. Section 6653(a) Additions to Tax
The final issue for decision is whether petitioner is liable for the additions to tax for negligence or intentional disregard of rules or regulations under section 6653(a) for each of the years in issue. [10] Petitioner failed to maintain books or records sufficient to accurately establish the amount of gross income for the years in issue. In addition, he substantially understated his gross income on his 1972 income tax return, and failed to file income *329 tax returns for the 1973, 1975, and 1976 taxable years. Petitioner has the burden of proving error in respondent's determination that the section 6653(a) additions to tax should be imposed against them.Rule 142(a); Bixby v. Commissioner,58 T.C. 757, 791-792 (1972); Enoch v. Commissioner,57 T.C. 781, 802 (1972). A taxpayer must maintain such permanent books and records as are sufficient to establish the amount of gross income, deductions, credits, or other matters required to be shown on his tax return. Section 6001 and section 1.6001-1(a) and (e), Income Tax Regs. Petitioner's failure to keep the records *330 necessary to properly report his income for the years in issue is indicative of his negligence. Smith v. Commissioner,66 T.C. 622, 651 (1976), revd. and remanded 601 F.2d 196 (5th Cir. 1979). Furthermore, a substantial understatement of income has been held to be indicative of negligence or intentional disregard of the rules or regulations. See Anders v. Commissioner,68 T.C. 474, 493 (1977). Accordingly, we sustain respondent's determination and hold that petitioner is liable for the additions to tax under section 6653(a) for each of the years in issue. To reflect concessions and our conclusions with respect to the disputed issues, Decisions will be entered under Rule 155.
Footnotes
1. The following cases have been consolidated for purposes of trial, briefing, and opinion by our order dated June 5, 1984: Mary G. Lane, docket No. 10430-79; Douglas A. Lane, docket No. 10431-79; Douglas A. Lane, docket No. 10432-79.↩
2. Respondent concedes that petitioner Mary G. Lane is entitled to the benefit of the innocent spouse provision under section 6013(e). ↩
3. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue. ↩
4. Respondent concedes that there is no deficiency in income or additions to tax due from petitioners for the 1974 taxable year.↩
5. Unless otherwise indicated, all rule references are to the Tax Court Rules of Practice and Procedure.↩
6. See also Kindred v. Commissioner,T.C. Memo. 1979-457, affd. 669 F.2d 400 (6th Cir. 1982); Asmar v. Commissioner,T.C. Memo. 1976-213; Baker v. Commissioner,T.C. Memo. 1976-93↩.
7. We note that respondent filed a motion pursuant to Rule 37(c) requesting that the undenied allegations of fact contained in paragraph 7(a) of his answer be deemed admitted. We granted this motion on January 9, 1980. The figures contained in paragraph 7(a) relate to respondent's determination of the deficiency for 1972 and do not include the concessions later made by respondent regarding certain non-taxable deposits that were not reflected in the notice of deficiency for the year 1972.↩
8. In Doncaster v. Commissioner,77 T.C. 334↩ (1981), we held that the Commissioner's burden of proof with respect to the section 6653(b) addition to tax for fraud can be satisfied through undenied facts deemed admitted under Rule 37(c).
9. Sec. 6651(a)(1) provides as follows: (a) Addition to the Tax. -- In case of failure -- (1) to file any return required under authority of subchapter A of chapter 61 (other than part III thereof), subchapter A of chapter 51 (relating to distilled spirits, wines, and beer), or of Subchapter A of chapter 52 (relating to tobacco, cigars, cigarettes, and cigarette papers and tubes), or of subchapter A of chapter 53 (relating to machine guns and certain other firearms), on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure containues, not exceeding 25 percent in the aggregate;↩
10. Sec. 6653(a) provides as follows: (a) Negligence or Intentional Disregard of Rules and Regulations with Respect to Income, Gift, or Windfall Profit Taxes -- (1) In General. -- If any part of any underpayment (as defined in subsection (c)(1) of any tax imposed by subtitle A, by chapter 12 of subtitle B or by chapter 45 (relating to windfall profit tax) is due to negligence or intentional disregard of rules or regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩