FLORA AND ARTHUR MARCUS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Marcus v. Commissioner
Docket No. 11728-90
United States Tax Court
T.C. Memo 1992-234; 1992 Tax Ct. Memo LEXIS 246; 63 T.C.M. (CCH) 2810; April 21, 1992, Filed *246 Decision will be entered under Rule 155. Arthur Marcus, pro se. Catherine R. Chastanet and Diane R. Mirabito, for respondent. COLVIN
COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: Respondent determined that petitioners failed to report income from approximately 90 interest-bearing accounts in financial institutions around the country. Respondent determined deficiencies and additions to tax for petitioner Arthur Marcus as follows: Additions to Tax
Year
Deficiency
Sec. 6653(b)(1)
Sec. 6653(b)(2)
Sec. 6654
Sec. 6661
1983
$ 45,609
$ 22,805
[1]
$ 2,775
$ 11,340
1984
34,138
17,069
[1]
2,120
8,450
1985
28,507
14,254
[1]
1,608
7,039
1986
3,262
[2] 2,447
[1],[2]
138  0  In the answer to amended petition, respondent alternatively asserted additions to tax pursuant to sections 6651(a)(1) and 6653(a)(1) and (2) *247 for 1983, 1984 and 1985, and section 6653(a)(1)(A) and (B) for 1986. Respondent determined deficiencies and additions to tax for petitioner Flora Marcus as follows: Additions to Tax Year
Deficiency
Sec. 6651(a)(1)
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6654
1983
$ 41,063
$ 10,266
$ 2,053
[1]
$2,513
1984
29,525
7,381
1,476
[1]
1,856
1985
24,500
6,125
1,225
[1]
1,404
1986
1,419
355
71
[1],[2]
68
Respondent also determined additions to tax as to petitioner Flora Marcus under section 6661 of $ 10,266 for 1983, $ 7,381 for 1984, and $ 6,125 for 1985. Respondent now concedes that neither petitioner is liable for additions to tax under section 6661 for any of the years in issue. References to petitioner in the singular are to Arthur Marcus. The remaining issues for decision are: 1. Whether petitioner is liable for tax on unreported *248 interest income of $ 105,180 in 1983, $ 85,180 in 1984, $ 75,733 in 1985, and $ 14,489 in 1986. We hold that he is. 2. Whether petitioner is liable for tax on unreported pension income of $ 8,091 in 1983, $ 8,225 in 1984, $ 8,347 in 1985, and $ 8,506 in 1986. We hold that he is. 3. Whether petitioner is liable for the addition to tax for fraud under section 6653(b)(1) and (2) for 1983, 1984 and 1985, and under section 6653(b)(1)(A) and (B) for 1986. We hold that he is. 4. Whether petitioner is liable for the addition to tax for failure to pay estimated tax under section 6654 for 1983, 1984, 1985, and 1986. We hold that he is. In light of our holding as to section 6653(b), we need not decide whether petitioner is liable for additions to tax for failure to file income tax returns under section 6651(a)(1) or negligence under section 6653(a) for 1983, 1984, 1985, and 1986. If the Court decides that any of the unreported interest income in issue is not taxable to petitioner, respondent's alternative position is that it is taxable to petitioner Flora Marcus. In light of our decision relating to petitioner, we hold that petitioner Flora Marcus is not liable for any deficiency *249 or addition to tax for the years in issue. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT 1. Petitioners and Their Family
Petitioners lived in New York, New York, when the petition in this case was filed. Flora Marcus is petitioner's mother. Petitioner was born in 1920. He has a college degree. He was a music teacher in the public schools of New York City until he retired in 1971. Thelma Chessin (Mrs. Chessin) is petitioner's sister. Her only connection with accounts maintained by petitioner was to cash his checks, make deposits on his behalf, and be of assistance to him. She never had an account jointly or in trust with petitioner. Mrs. Chessin did not have an ownership interest in any trust accounts at Chase Manhattan Bank. 2. Interest Bearing Accounts in Issue
Petitioner's name, Social Security number, and/or address appears either singly, jointly, or in trust, on each of the approximately 90 accounts at the approximately 19 banks and institutions listed in appendix A. Those banks and institutions *250 issued Forms 1099 to petitioners for interest totaling $ 105,180 in 1983, $ 85,180 in 1984, $ 75,733 in 1985, and $ 14,489 in 1986. Flora Marcus' name also appeared on most of the bank accounts listed in appendix A for all the years stated above. Names appearing "in trust for" on some of the accounts in issue included Thelma Chessin, Steven Chessin, Cathy Chessin, Gerald Chessin, Michael Chessin, Flora Marcus, Jack Marcus, Mary Marcus, Leonard Marcus, Samuel Marcus, and Pearl Gross. Except for Flora Marcus and Thelma Chessin, these persons are not identified in the record. Petitioner was always listed as the owner of these accounts and always controlled these accounts. The interest income in issue did not belong to petitioner's nieces and nephews, his mother, or Marcus Music. Petitioner personally conducted substantially all of the transactions involving these accounts. He conducted transactions on an account at Chase Manhattan Bank in the name of Marcus Music and/or Marcus Music Defined Benefit Pension Plan. Many of the transactions involving the accounts in issue were for more than $ 100,000. On numerous occasions the account balance in an account exceeded $ 100,000. Petitioner *251 Flora Marcus did not deposit funds into or withdraw funds from any of these accounts during the years in issue. Petitioner gave respondent's revenue agent and appeals officer various explanations for the interest income. He said that it was in revocable trust accounts, that it belonged to his mother, his nieces and nephews, and Marcus Music. He did not substantiate any of these claims. Petitioner refused to allow respondent's revenue agent to speak with petitioner Flora Marcus. He did not provide respondent with any of the bank records or pension plan documents requested, not even in response to the Court's order. Respondent was able to obtain some bank records, which to the extent available, corroborated the amounts reported on the Forms 1099. Petitioner exercised complete dominion over the accounts in issue. He had unfettered access to the funds. He had the power to, and did, dispose of the accounts as he desired. 3. Status and Business Purpose of Marcus Music
Marcus Music was incorporated on November 20, 1983. Its certificate of incorporation states it was formed to acquire and own real property and carry on other lawful trade or business incident or proper in *252 connection with the ownership of real property. Petitioners did not record the minutes of any Marcus Music board of directors meetings held in 1983, 1984, 1985, or 1986. The board of directors of Marcus Music did not meet formally in 1983, 1984, 1985, or 1986. Marcus Music and petitioner had the same address at the time of trial (3900 Shore Parkway, Brooklyn, New York) and during the years at issue (875 Pennsylvania Avenue, Brooklyn, New York). No one conducted any significant activities for Marcus Music other than petitioner. Marcus Music's only apparent activity was opening money market, savings, and checking accounts or purchasing certificates of deposits or notes. Every transaction entered into by Marcus Music involved substantially all of the corporate funds. Marcus Music had no banking or other financial institution accounts or activity other than the alleged defined benefit pension plan during the years in issue. The only documents received by Marcus Music from banks and various financial institutions were certificates of deposit, bank statements, and receipts. Marcus Music did not conduct any lending or investment activity other than the accounts mentioned above. *253 Marcus Music did not advertise itself as an investment company. 4. Petitioner's Pension Income
Petitioner received retirement pension funds from the New York City Board of Education. The New York City Teachers Retirement System (NYCTRS) issued Forms W2-P to petitioner for 1983, 1984, 1985, and 1986 stating the amount of pension funds paid to petitioner in each of those years. The NYCTRS gives retirees its opinion whether pension payments to them are taxable. The NYCTRS issued a report to petitioner stating that a monthly pension payment was made and that the entire amount was taxable. Petitioner received pension income of $ 8,091 in 1983, $ 8,225 in 1984, $ 8,347 in 1985, and $ 8,506 in 1986. 5. Income Tax Returns
On November 7, 1988, Marcus Music filed corporate income tax returns, Forms 1120, for taxable years 1983, 1984, 1985, and 1986 (the Forms 1120). The Form 1120 for 1983 does not claim a deduction for pension or profit-sharing plans. No interest income is reported on any of the Forms 1120 for the years in issue. The Forms 1120 for 1984, 1985, and 1986 include the following items: Marcus Music
Forms 1120 for Taxable Years -- 1984
1985
1986
Gross receipts or sales
$ 95,000
$ 95,000
$ 95,000
Deduction for compensation
for others  95,000
90,000
90,000
Deduction for employee
benefit program  90,000
90,000
--   *254 Neither Marcus Music nor petitioner filed income tax returns with the New York State Department of Taxation and Finance for any of the taxable years in issue. Petitioner's 1981 and 1982 taxable years also involved taxable interest. In a notice of deficiency issued to petitioner for taxable year 1981, respondent determined that petitioner's gross income should be increased by $ 57,594 because of unreported taxable interest income. Petitioner claimed a refund for taxable year 1982 relying on a theory that to some extent involved unreported taxable interest income. Petitioner filed income tax returns for 1983, 1984, and 1985 on April 6, 1988, and for 1986 on May 12, 1988. Respondent issued the notice of deficiency to petitioner on March 9, 1990. Petitioner Flora Marcus filed a Federal income tax return for 1983 on February 26, 1990. She did not file returns for the other years in issue. She did not report any of the interest income in issue on any income tax return. Respondent prepared substitute returns for petitioner Flora Marcus for 1984 and 1986 on February 26, 1990, and for 1985 on October 9, 1990. Respondent issued a notice of deficiency to Flora Marcus on March 15, *255 1990. OPINION 1. Petitioner's Liability for Tax on Unreported Interest Income
Respondent's primary position is that the unreported interest income is taxable to petitioner rather than to Flora Marcus, Marcus Music, or others. Petitioners admit that the interest income accrued on the approximately 90 accounts in issue here is taxable, sec. 61(a)(1) and (4),and they do not dispute the amount of interest income. Petitioners disagree with respondent as to which taxpayer is liable for the interest income. Petitioner argues that the interest income belongs to others including his mother, his relatives, or Marcus Music. Respondent determined that petitioner received unreported interest income of $ 105,180 in 1983, $ 85,180 in 1984, $ 75,733 in 1985, and $ 14,489 in 1986. Respondent's determination is presumed to be correct and petitioners have the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Respondent's determination is based on Forms 1099 issued to petitioner and Marcus Music which were provided to respondent by the financial institutions in which the interest income was earned. Respondent also obtained statements *256 from each of the financial institutions to verify the amounts of interest income listed in the Forms 1099 and in the notice of deficiency. Respondent's revenue agent prepared a summary of the interest earned in the years in issue on the accounts based on the bank statements. Respondent's summary generally corroborates the notice of deficiency which reflects interest income reported on the Forms 1099. a. Petitioner's Claim That the Interest Income Is Taxable to His Relatives
Petitioners have not shown the source of funds that were deposited into the accounts that produced the unreported interest in issue. However, gross income includes all "accessions to wealth, clearly realized, and over which the taxpayers have complete dominion." Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955). Income is taxable when its recipient has such control over it that, as a practical matter, he derives readily realizable economic value from it. Rutkin v. United States, 343 U.S. 130, 137 (1952). In the instant case, petitioner exercised complete dominion over the accounts and the interest that was generated from them as evidenced by several *257 factors. He had unfettered access to the funds. He conducted substantially all of the transactions involving the bank accounts at issue. Petitioner had the power to, and did, dispose of the accounts as he saw fit. "The power to dispose of income is the equivalent of ownership of it." Helvering v. Horst, 311 U.S. 112, 118 (1940). Petitioner's name, address, and/or Social Security number appear on all of the accounts maintained at approximately 19 different banks during the years in issue. His name appeared on all of the bank accounts in taxable years 1981 and 1982. There is no persuasive evidence that anyone but petitioner had any control over the accounts. Petitioner has not shown any source of income, other than the unreported interest, pension, and an undetermined amount of Social Security benefits. He testified that he realized it would cost him considerably more than the $ 8,000 per year in pension income to live. He stated that his reason for depositing the money into the accounts was to earn interest to be able to take care of his needs. Petitioner told respondent's revenue agent that the income in issue belonged to his nieces and nephews. However, *258 petitioner presented no convincing evidence to support this claim. The record includes names of others on accounts as purported beneficiaries; however, petitioner retained control over these accounts at all times during the years in issue. Mrs. Chessin, petitioner's sister with whom he claimed to maintain several trust accounts, testified that she did not remember opening any trust accounts with either of petitioners, did not have an ownership interest in any trust accounts at Chase Manhattan Bank, never had an account jointly or in trust with petitioner, and that she only occasionally transacted business on petitioner's accounts to assist him. Mrs. Chessin was petitioner's only relative to take the stand as a witness. We infer that other relatives' testimony as to their involvement with the accounts in issue would also be adverse to petitioner, at best like that of Mrs. Chessin. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). We are not persuaded by petitioner's claim that the income in issue belongs to his mother or was placed in testamentary trust accounts. There is no corroboration *259 of this claim in the record. Petitioner Flora Marcus has not filed individual income tax returns for any of the years in issue except 1983 and has not reported the interest income. Petitioner has not substantiated his claim that he had a written power of attorney for petitioner Flora Marcus during the years in issue. There is no persuasive evidence to support petitioner's trust account theory. We are not persuaded by petitioner's attempt to shift the payment of the tax due on the interest income in issue to his relatives. It has long been established that the mere assignment of the right to receive income is not enough to insulate the assignor from income tax liability. [Citations omitted.] As long as the assignor actually earns the income or is otherwise the source of the right to receive and enjoy the income, he remains taxable. * * * The crucial question remains whether the assignor retains sufficient power and control over the assigned property or over receipt of the income to make it reasonable to treat him as the recipient of the income for tax purposes. * * *
Commissioner v. Sunnen, 333 U.S. 591, 604 (1948). Petitioner has failed to *260 carry his burden of proving that the interest income was not his. In light of the foregoing, we do not recognize the claimed assignment of the interest income to petitioner's relatives or corporation for income tax purposes. We conclude that petitioner is taxable on the interest since the record shows he retained sufficient dominion and control to reasonably treat him as the owner of the income in issue. Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955). Accordingly, we hold that the unreported interest income is solely taxable to petitioner. b. Marcus Music and Its Purported Pension Plan
Petitioners also contend that the interest income in issue was transferred to a Marcus Music defined benefit pension plan, and is therefore deferred. Petitioner claims that he assigned the income to his corporation, and is no longer taxable on the income in issue. We are not persuaded that petitioner's claim has any validity. Petitioners failed to prove the existence of a qualified pension plan or when it purportedly was established. They did not introduce either the purported pension plan or any related documents, such as Forms 5500. The purported assignment *261 does not shift the responsibility for the tax due from petitioner to his corporation. Helvering v. Horst, 311 U.S. 112, 120 (1940), see Lucas v. Earl, 281 U.S. 111, 115 (1930). We conclude that Marcus Music should not be separately recognized for income tax purposes because Marcus Music lacked a bona fide business purpose and existed only to serve petitioner's tax avoidance plans. In Moline Properties, Inc. v. Commissioner, 319 U.S. 436, 438-439 (1943), the Supreme Court held that a corporate entity is deemed to exist if the corporation is organized to carry on a business activity or if, in fact, such activity has been carried on. In Kimbrell v. Commissioner, 371 F.2d 897, 900-901 (5th Cir. 1967), affg. T.C. Memo. 1965-115, the Court of Appeals held that the taxpayer's corporations were not entitled to recognition for Federal tax purposes because they were merely depositories for funds earned by the taxpayers. Petitioners argue that in 1978, Marcus Music's principal business was music education and entertainment. However, according to the certificate of incorporation filed in 1983, *262 Marcus Music was formed to acquire and own real property and carry on other lawful trade or business related to the ownership of real property. There is nothing in the record to indicate that Marcus Music ever owned any real property. Petitioners allege that Marcus Music had a business purpose of being a small business investment company. Petitioner alleged that Marcus Music was in the business of lending money, as part of its alleged investment activity. Petitioner testified that Marcus Music lent money to banks and that its clients included banks and the United States Government. However, petitioner's purported lending activity consisted of purchasing certificates of deposit and notes and opening savings and/or money market accounts. There is no credible evidence of any lending activity other than the deposits or certificates with commercial lending institutions. There is no persuasive evidence that Marcus Music was a small business investment company. The articles of incorporation for Marcus Music were never revised to show that the corporation was a small business investment company. The corporation never advertised itself as an investment company. Other factors lead *263 us to conclude that Marcus Music had no business purpose. It had no banking or other financial accounts other than the alleged pension plan during the taxable years in issue. Marcus Music did not keep records of any business operations. Its only records in evidence are bank statements. Petitioners did not record the minutes of any board of directors meetings held in the years in issue. No formal meetings of the board of directors were held. Marcus Music did not file Federal corporate income tax returns (Forms 1120) until November 7, 1988, when it filed returns for 1983, 1984, 1985, and 1986. The return for 1983 does not claim a deduction for pension or profit-sharing plans. The return for 1986 does not claim any deduction for employee benefit programs. The return for 1984 reports gross receipts or sales of $ 95,000 and claims deductions of $ 95,000 for compensation of officers and $ 90,000 for employee benefit programs. However, despite this apparent decrease in the corporate assets, the return also reports a $ 100,000 increase in total assets from 1983. Similarly, the 1985 return reports gross receipts or sales in the amount of $ 95,000, claims deductions for compensation *264 of officers in the amount of $ 90,000 and employee benefit programs in the amount of $ 90,000, and reports a $ 100,000 increase in total assets. Nothing presented by petitioner convinces us that these returns correctly reflect any bona fide business activity. It appears highly unlikely that the corporation would earn gross receipts in the same amount for each of the years, given petitioners' claim as to the nature of Marcus Music's business as an investment company seizing opportunities as they arise. Petitioner testified that he was the only employee, yet he denies receiving compensation of $ 90,000 from Marcus Music. Marcus Music did not file tax returns with the New York State Department of Taxation and Finance in any of the years in issue. Petitioner conducted substantially all of the transactions involving the accounts in issue. No one else conducted any significant activity for Marcus Music. All of these factors lead us to conclude that Marcus Music had no bona fide business purpose, other than as part of petitioner's plan to shelter the interest income at issue from income tax. Petitioner claims that he and Marcus Music had different addresses. However, the address *265 used on petitioner's Forms 1099 and W2-P's, preprinted checks, bank statements, and his individual income tax return during the years at issue was 875 Pennsylvania Avenue, Brooklyn, New York. This is also the address for Marcus Music during those years. In light of the totality of these circumstances, and the fact that during the years in issue, Marcus Music has neither carried on the business activity for which it was organized according to its articles of incorporation nor any bona fide "investment" or "lending" activity, we conclude that it should be disregarded as a corporate entity for Federal tax purposes. See Kimbrell v. Commissioner, 371 F.2d 897, 901 (5th Cir. 1967), affg. T.C. Memo. 1965-115; Ludwig v. Commissioner, T.C. Memo. 1983-678. Petitioner alone controlled and had the power to dispose of the unreported interest income. Accordingly, we do not recognize the purported transfers to Marcus Music or Marcus Music's alleged defined benefit pension plan for Federal income tax purposes. Moline Properties, Inc. v. Commissioner, 319 U.S. 436 (1943); Kimbrell v. Commissioner, supra. *266 We conclude that the unreported interest income is taxable to petitioner because it is a failed attempt at assignment of income. Helvering v. Horst, 311 U.S. 112, 120 (1940); Lucas v. Earl, 281 U.S. 111, 115 (1930). We sustain respondent's primary position that the unreported taxable interest income is solely attributable to petitioner. 2. Unreported Pension Income
The Forms W2-P issued to petitioner by the NYCTRS for 1983, 1984, 1985, and 1986 show that he received pension income. Petitioner testified that he realized that upon his retirement he would receive pension income of approximately $ 8,000 annually. Petitioner testified that he placed his retirement pension funds received from New York City into IRA and Keogh accounts. He provided no other evidence to support this assertion. Petitioner claims that the amounts he received from the New York City Board of Education in each of the years before us resulted from a settlement for injuries in the line of duty. However, there is no evidence in the record to support this contention. We reject petitioner's argument that he assigned the pension income to Marcus Music's purported *267 defined benefit pension plan for reasons previously stated. Pension income is taxable. Sec. 61(a)(11). We conclude that petitioner received unreported taxable pension income in 1983, 1984, 1985, and 1986 in the amounts determined by respondent. 3. Addition to Tax for Fraud Under Section 6653(b)
If any part of the underpayment of tax required to be shown on a return is due to fraud, an amount equal to 50 percent (75 percent for returns due after December 31, 1986) of the underpayment shall be added to the tax. Sec. 6653(b)(1) and 6653(b)(1)(A). Section 6653(b)(2) and 6653(b)(1)(B) applies only to the portion of the underpayment attributable to fraud. The existence of fraud is a question of fact to be resolved based upon the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud is not to be imputed or presumed. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Respondent bears the burden of proving by clear and convincing evidence that an underpayment exists in each of the years in issue and that some portion of the underpayment is *268 due to fraud. Sec. 7454(a); Rule 142(b); Otsuki v. Commissioner, 53 T.C. 96 (1969). Respondent must also show that petitioner intended to evade taxes known to be owing. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968). Here respondent did so by showing conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Respondent need not prove the precise amount of the underpayment due to fraud, but only that some part of the underpayment of tax for the taxable year in issue is attributable to fraud. Lee v. United States, 466 F.2d 11, 16-17 (5th Cir. 1972). Where the taxpayer alleges a nontaxable source, respondent may satisfy the burden of proving an underpayment of some amount by disproving the alleged nontaxable source. United States v. Massei, 355 U.S. 595, 595 (1958). Further, respondent may disprove the alleged specific nontaxable sources of income by demonstrating that the reconstruction of income is accurate combined with a showing that petitioner's allegations are inconsistent, implausible, and not supported by objective evidence in the record. Parks v. Commissioner, 94 T.C. 654, 661 (1990). *269 Petitioner failed to report substantial amounts of income. His allegations that the interest income belonged to either his nieces and nephews, his mother, and/or the corporate pension plan are inconsistent, implausible, and not supported by objective evidence. His claim that the income is not taxable because of the purported pension fund is totally meritless, and his manipulation of the approximately 90 accounts at 19 banks is an elaborate subterfuge through which he intentionally sought to avoid tax. We conclude that petitioner had the requisite intent to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. The indicia of fraud in the instant case include the following: (a) Consistent and substantial understatement of income. The consistent and substantial understatement of income is evidence of fraud. Gromacki v. Commissioner, 361 F.2d 727, 732 (7th Cir. 1966), affg. T.C. Memo. 1964-292; Otsuki v. Commissioner, 53 T.C. 96, 108 (1969). Petitioner never reported or paid tax on more than $ 300,000 in taxable interest and pension income over a 4-year period. *270 (b) Absence of ignorance or mistake. Petitioner is college educated. He has for several years opened and manipulated numerous interest-bearing accounts, earning substantial amounts of interest. Documents from the NYCTRS indicate that petitioner knew that the entire pension petitioner was taxable. We view his conduct on these points as concoctions to avoid tax payment, not ignorance. (c) Awareness of tax law. See Grosshandler v. Commissioner, 75 T.C. 1 (1980); O'Connor v. Commissioner, 412 F.2d 304 (2d Cir. 1969), affg. on this point, T.C. Memo. 1967-174. Petitioner concedes that the interest income in issue is taxable, but he contends that it is not taxable to him. His elaborate efforts to conceal his income here show he is aware of but mightily seeking to avoid his tax obligations. (d) Failure to fully cooperate with and misleading statements to respondent during the audit. Korecky v. Commissioner, 781 F.2d 1566, 1568 (11th Cir. 1986), affg. T.C. Memo. 1985-63; McManus v. Commissioner, T.C. Memo. 1972-200, affd. 486 F.2d 1399 (4th Cir. 1973). *271 Petitioner gave respondent's revenue agent and appeals officer various explanations for the interest income, none of which were substantiated. Petitioner refused to allow respondent's revenue agent to speak with his mother, petitioner Flora Marcus. He did not provide respondent with any of the bank records or pension plan documents requested, not even in response to the Court's order. (e) Repeated failure to file tax returns. Parks v. Commissioner, 94 T.C. 654, 664 (1990); see also Bradford v. Commissioner, 796 F.2d 303 (9th Cir. 1986), affg. T.C. Memo. 1984-601. Petitioner showed that he knew that he was required to report interest income received and to file a tax return in the years in issue because he filed and reported interest income on his 1981 income tax return. For example, his receipt of Forms 1099 from Barclays Bank showed interest accrued in the amounts of $ 10,143.54, $ 29,214.21, and $ 6,644.08 in 1984, 1985, and 1986, respectively. The Forms W2-P from the teachers' retirement system at the very least should have put him on notice that filing of a tax return was required. (f) Failure to keep adequate records. *272 Petitioner failed to provide pertinent records regarding the ownership of the bank accounts or the corporate pension plan. Papineau v. Commissioner, 28 T.C. 54, 58 (1957); see Preston v. Commissioner, T.C. Memo. 1985-463. (g) Concealment of assets. See Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986). Petitioner's use of approximately 19 different banks and approximately 90 bank accounts indicates that he sought to conceal his assets. Petitioner argues that the bank accounts were never concealed. He asserts that respondent's ability to obtain the information proves that they were not concealed. We disagree. Petitioner argues that he opened the 100 or so accounts at issue to ensure Federal Deposit Insurance Corporation (FDIC) coverage for each account by keeping them less than $ 100,000. Petitioner's position is untenable in light of the many transactions for amounts significantly in excess of $ 100,000. Petitioner's attempt to conceal assets is also illustrated by his myriad theories for avoiding taxation on interest income. Petitioner claims that he was under constant IRS surveillance during the years *273 at issue and that he provided the IRS with total access to all books and records and provided them with specific leads. Petitioner produced no credible evidence to support his claims. We are not persuaded by these assertions. In light of the above, we are persuaded by clear and convincing evidence and hold that petitioner is liable for fraud for each of the years at issue. We further hold that the entire underpayment of tax due from petitioner for each of the taxable years 1983, 1984, 1985, and 1986 is due to fraud. 4. Failure to Pay Estimated Tax Under Section 6654(a)
An addition to tax is imposed on an underpayment of estimated tax by an individual. Sec. 6654(a). Petitioner has the burden of proving this addition does not apply. Rule 142(a). There is nothing in the record to show that petitioner made any estimated tax payments in any of the years in issue or that any of the exceptions apply. Accordingly, we sustain respondent's determination of the addition to tax pursuant to section 6654 as to petitioner. 5. Petitioner's Miscellaneous Theories
Petitioners raise numerous other theories to support their position and attack respondent. We are not persuaded, *274 as petitioner argues, that respondent failed to follow specific leads. Rather, we conclude that respondent followed all available leads. Petitioners allege for the first time in their answering brief various Constitutional arguments relying on Article III and the First, Fourth, Fifth, Eighth, and Fourteenth Amendments. These issues are barred as violations of Rule 31 as improperly pleaded in that they failed to give respondent fair notice of petitioners' positions. Estate of Mandels v. Commissioner, 64 T.C. 61, 73 (1975); Markwardt v. Commissioner, 64 T.C. 989, 997 (1975). Moreover, petitioners have failed to cite any persuasive facts in the record or legal authority in support of these positions. Petitioners argue for the first time in their answering brief that respondent violated the Right to Financial Privacy Act of 1976, 12 U.S.C. sections 3401-3422 (1988), 92 Stat. 3697. Section 3402 of that Act provides that financial records that are reasonably described and disclosed in response to administrative summonses which meet the provisions of section 3405 or that are disclosed in response to a judicial subpoena which meets the requirements *275 of section 3407 are exempt from the general prohibition of the Act. Petitioner has produced no credible evidence that respondent has violated the Right to Financial Privacy Act of 1976. This issue is also barred under Rule 31 as improper for failure to provide fair notice. Petitioners' claim that respondent has violated the Freedom of Information Act, 5 U.S.C. sections 552, 552a, 552b (1976), is irrelevant to this case, and petitioner provided no credible evidence in support of this claim. Petitioners' reliance on sections 7201, 7203, 7206, 7207,and 7212 is irrelevant and lacks merit. In addition, we find no substance to petitioner's vague unsupported charges of violations of sections 7213 or 7214. Petitioners' allegations concerning the statute of limitations are without merit. We have found fraud by petitioner for each of the years in issue, and petitioner failed to file timely returns for the years in issue. Thus, the notice of deficiency was timely under section 6501(c)(1). Accordingly, petitioners' statute of limitations claim is without merit. Petitioners assert that they are entitled to losses under sections 1242 and 1243 because Marcus Music became a small business *276 investment company through its nominal ownership of bank accounts and investments. Petitioners' reliance on this argument is incredible because they have done nothing to show Marcus Music is entitled to be a small business investment company, or that it has any bearing on whether they are taxable on these accounts. In addition, section 1242 refers to losses on small business investment company stock. This is not an issue before us. Moreover, we are not persuaded that Marcus Music is a corporation to which the Small Business Investment Act of 1958 applies. Similarly, section 1243 is not applicable because there is no issue before us regarding the treatment of losses on stock received pursuant to the conversion privilege of convertible debentures acquired under section 304 of the Small Business Investment Act of 1958, Pub. L. 85-699, 72 Stat. 689, 693. Petitioners' citation of sections 1231 and 1232 is inapt. Section 1231 refers to involuntary conversion of property used in a trade or business, which is not an issue here. Section 1232 pertains to bonds, debentures, notes, or certificates or other evidences of indebtedness which are capital assets in the hands of the taxpayer *277 which are issued by a corporation. The record does not support the conclusion that any of Marcus Music's property has been involuntarily converted. Finally, petitioners have attempted to argue many purported facts that are irrelevant, not supported by the record, and not admitted into evidence. Thus, we do not consider purported statements of respondent's agents, various bank officers and references to FDIC rules and regulations, the Federal Reserve Bank, and litigation in other courts in deciding this case. Other theories advanced by petitioners, such as coercion, collusion, false testimony under oath, obstruction of justice, and entrapment by respondent's agents, are rejected without comment. Having sustained respondent's determination and primary position that the entire liability is attributable to petitioner, we hold that Flora Marcus is not liable for any deficiency or addition to tax for the years in issue. To reflect concessions and the foregoing, Decision will be entered under Rule 155. APPENDIX A
Interest Paid as Reported to Respondent
on Forms 1099 Bank and Account Nos.
1983
1984
1985
1986
Bank Leumi Trust Co.
of New York
(8 accounts)
$ 15,831 $1,966 Chase Manhattan Bank N.A.
(6 accounts)
208
31,258
$ 35,802
$ 7,762 American Savings Bank
(9 accounts)
32,112
28,223
Central Federal
Savings Bank
(10 accounts)
25,373
4,496
Home Savings of
America
(8 accounts)
200
Bank of America
N.T. & S.A.
(7 accounts)
5,335
Marine Midland
Bank N.A.
(1 account)
19
20
10
Chemical Bank
(9 accounts)
14,579
Dollar Dry Dock Bank
(2 accounts)
5,698
City Trust Bank
(8 accounts)
4,770
New York Bank
for Savings
(2 accounts)
107
Manufacturers Hanover
Trust Bank
(9 accounts)
724
Manufacturers Hanover
Trust Bank
(1 account)
$ 1,510
Bankers Trust Co.
(1 account)
1,726
WilliamsburgSavings
Bank
(10 accounts)
5,005
$ 245
Navy Federal Credit
Union
(1 account)
10
45
$ 17   Barclays Bank of
New York N.A.
(1 account)
10,143
29,214
6,644
Roosevelt Savings
Bank
(1 account)
2,157
Amalgamated Bank
of New York
(1 account)
8,091
Citibank, N.A. in
(1 account)
161
59
Chase Manhattan
Retirement Plans
Self-Employed Master
Trust
(1 account)
$ 224  823
8
7
Total      $ 105,180
$ 85,180
$ 75,733
$ 14,489
*278 Footnotes
1. Fifty percent of the interest due on the deficiency for the year.↩
2. The additions to tax for fraud for 1986 are under section 6653(b)(1)(A) and (B)↩.
1. Fifty percent of the interest due on the deficiency for the year.↩
2. The additions to tax for negligence for 1986 are under sections 6653(a)(1)(A) and (B)↩.